## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **GAYNELL WILSON,** | |
| *Plaintiff*, | |
| v. | **Civil No.: 1:22-cv-02884-JRR** |
| **NATIONAL RAILROAD PASSENGER CORPORATION,** | |
| *Defendant*. | |

## <u>MEMORANDUM OPINION</u>

Pending before the court are Defendant National Railroad Passenger Corporation's Motion for Summary Judgment (ECF No. 72; "Defendant's Motion") and Plaintiff's Amended Response to Defendant's Motion for Summary Judgment, which the court construes as a motion pursuant to Rule 56(d) (ECF No. 78; "Plaintiff's Rule 56(d) Motion"). The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, Defendant's Motion will be granted and Plaintiff's Rule 56(d) Motion will be denied.

## I.    <u>BACKGROUND</u>

On November 7, 2022, Plaintiff, *pro se* at the time, initiated this action alleging employment discrimination in violation of Title VII. (ECF No. 1.) Following Defendant's Answer, on March 24, 2023, the court issued its initial scheduling order with a discovery deadline of August 7, 2023. (ECF No. 17.) A week later, Plaintiff, without leave of court or Defendant's consent, filed an amended complaint, which was substantively the same as her initial complaint except that it added a request for compensatory and punitive damages. (ECF No. 19.) Despite

Plaintiff's failure to abide Rule 15, Defendant consented to Plaintiff's filing of the Amended Complaint.  (ECF No. 22.)

On September 7, 2023, the parties jointly moved to extend the discovery deadline to November 6, 2023, which the court approved.  (ECF Nos. 28, 29.)  On October 6, 2023, an attorney for Plaintiff entered his appearance.  (ECF No. 41.)  Then, on November 15, 2023, Plaintiff, represented by counsel, filed a second amended complaint without leave of court or consent of Defendant.  (ECF No. 44.)  After the Clerk's Office issued a Quality Control Notice, Plaintiff filed a motion to amend her complaint.  (ECF Nos. 48, 49, 50.)  Following supplemental briefing, the court granted in part and denied in part the motion.  (ECF Nos. 65, 66.)   Plaintiff's Second Amended Complaint (ECF No. 67; the "Second Amended Complaint") is now the operative complaint subject to the provisions in the court's rulings at ECF Nos. 65, 66.  The following claims against Defendant remain: retaliation in violation of Title VII, disparate treatment based on sex in violation of Title VII, and disparate treatment based on race in violation of Title VII.  (ECF No. 67 at p. 2.)

Defendant now moves for summary judgment on all claims against it.  (ECF No. 72.) Plaintiff, again pro se but seemingly aided by counsel, *see* ECF No. 74,  opposes the Motion.  (ECF No. 76.)[1]  Plaintiff then filed what she titled as an "Amended Response to Defendant's Motion for Summary Judgment," which the court construes as a motion pursuant to Rule 56(d).  (ECF No. 78.)  Defendant opposes Plaintiff's Rule 56(d) Motion. (ECF No. 79.)

---

[1] Except when referencing particular paragraphs, the court's reference to this filing refers to the internal CM/ECF pagination.

II.     **UNDISPUTED FACTS**[2]

**A. Plaintiff's Employment**

Plaintiff, a Black female, began her employment with Defendant as an Assistant Conductor on September 17, 2003.  (EEOC Charges, ECF No. 67-1; Wilson Dep. Tr. ("Wilson Dep."), ECF No. 72-2 at 22:2–10, 25:3–5.)[3]  Prior to her termination, Plaintiff worked as a Locomotive Engineer.  (ECF No. 67 ¶ 9; ECF No. 72-1 at p. 2.)  Plaintiff's supervisor at the time of the incident at issue here was Alton Lamontagne, a Black male.  (Wilson Dep., ECF No. 72-2 at  35:18–21, 39:1–2.)

*1. Plaintiff's Previous  Disciplinary History*

During her years of employment, Plaintiff was subject to occasional disciplinary action.  In October 2008, Defendant placed Plaintiff on a two-day suspension for violating Defendant's rule "relating to movement at a restricted speed."  (Decl. of Glen Henson, Defendant's Senior Director of Labor Relations, ("Henson Decl."), ECF No. 72-3 ¶ 4.)[4]  In December 2012, Defendant placed Plaintiff on a 30-day suspension for violating Defendant's policy against "operating a train after the brake pads were changed without first performing a brake test."  *Id.* ¶ 5.  In January 2019, Defendant temporarily removed Plaintiff from service for "[throwing] a letter and envelope at another employee."  *Id.* ¶ 7.  In February 2021, Defendant charged Plaintiff with policy violations related to "abandoning her assignment and submitting a falsified time ticket for hours she did not work."  *Id.* ¶ 8.  Following a disciplinary hearing, a hearing officer found the charges against Plaintiff had been proven.  *Id.* ¶¶ 9–10.  On March 30, 2021, AVP of the Southeast Division, Jarrett

---

[2] Plaintiff offers a competing "statement of material facts" in opposition to Defendant's Motion; however, some of the asserted undisputed facts are unsupported by citation to any record evidence.  The court therefore does not include them here.  *See, e.g.*, ECF No. 76-1 ¶¶ 4–5.

[3] With the exception of reference to Plaintiff's deposition testimony, the court's reference to this filing refers to the internal CM/ECF pagination.

[4] With exception of reference to the Declaration of Glen Henson, the court's reference to this filing refers to the internal CM/ECF pagination.

Alston, a Black male, terminated Plaintiff based upon the findings; following appeal, the action was reduced to suspension. *Id.* ¶¶ 11–12.

### 2. *Plaintiff's Charges of Discrimination*

Plaintiff filed three Charges of Discrimination with the U.S. Equal Employment Opportunity Commission alleging discrimination based on race and sex, as well as retaliation (the "EEOC Charges"). (EEOC Charges, ECF No. 67-1.) The EEOC Charges were filed on March 27, 2021 (Charge No. 531-2021-00998), April 6, 2021 (Charge No. 531-2021-01751), and September 9, 2022 (Charge No. 570-2022-03190). *Id.*

### B. September 26, 2021 Protect Crew Assignment

On September 26, 2021, Plaintiff, along with Rodney Johnson and Ramon Jackson, both Black males, were assigned to work on a Protect Crew at Martin State Airport. (Wilson Dep., ECF No. 72-2 at 75:21–76:5; 89:18–90:12.) The Protect Crew was composed of a conductor (Johnson), an assistant conductor (Jackson), and a locomotive engineer (Plaintiff). *Id.* at 75:19–76:3. While on Protect Crew, employees are essentially on "standby" in case Defendant needs them to operate a train. *Id.* 89:18–90:8. Plaintiff then was required to be at the facility until the end of her shift, which was 10:10 p.m. *Id.* at 88:17–21.

This same day at around 4:00 p.m., one of Defendant's trains struck a person in Aberdeen Maryland. (Lamontagne Decl., ECF No. 72-4 ¶ 3.) The incident caused a disruption in service. *Id.* At 7:18 p.m., Defendant's Trainmaster Tracey Armstrong, a Black male, attempted to call Johnson because the Protect Crew was needed. (Wilson Dep., ECF No. 72-2 at 74:16–75:8, 158:9–11.) Armstrong then asked Lamontagne to locate the Protect Crew at issue. (Wilson Dep., ECF No. 72-2 at 74:16–75:8; Lamontagne Decl., ECF No. 72-4 ¶ 5.) Lamontagne attests that he went

to Martin State Airport and was unable to locate the Protect Crew, their belongings, or their vehicles. (Lamontagne Decl., ECF No. 72-4 ¶ 6.)

Plaintiff testified at deposition that she, Johnson, and Jackson, went offsite shortly after 8:00 p.m. to get something to eat. (Wilson Dep., ECF No. 72-2 at 89:4–14.) Plaintiff did not let a supervisor know that she was going offsite. *Id.* at 100:19–101:1. Plaintiff also testified that she reported to Johnson as the Conductor while on the Protect Crew and, according to Plaintiff, Johnson told her that no one had called his phone and said they "could go and get something to eat, and then come back." *Id.* at 88:22–89:10, 96:9–19. Plaintiff contends she returned to the facility property round 9:00 p.m. *Id.* 89:15–18. According to Plaintiff:

> While on protect, you -- as an engineer or a conductor, you are allowed to go get food. You are allowed to leave the property and go get food. Remember, my job is -- I have protect in the beginning part of my shift, at the early part of my job, and I have protect at the end of my job. It's very normal for conductors and engineers, when they go into protect, they'll leave the property go get something to eat . . . .

*Id.* at 159:14–22.

### C. Resulting Disciplinary Investigation

On October 3, 2021, Tracey Armstrong, a Black male, held Plaintiff, Jackson, and Johnson out of service based upon charges of falsifying their timecards and job abandonment for the September 26, 2021 incident.[5] (Notices for Holding Employee Out of Service, ECF No. 72-3 at p. 19–21.) Plaintiff testified that, at some point during this general time, she heard "through [her]

---

[5] Defendant seems to suggest that it offered Plaintiff's Service Ticket for September 26, 2021, and some record of Armstrong's purported investigation on October 3, 2021, as evidence in support of its Motion; the court is unable to locate the exhibit to which Defendant refers in the attached documents. (ECF No. 72-1 ¶¶ 16, 24–28.) *See* FED. R. CIV. P. 56(c) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . .").

conductor," that Lamontagne "said that [Johnson] would have to take one for the team, and [Plaintiff] would be fired and not get [her] job back." (Wilson Dep., ECF No. 72-2 at 102:15–19.)

October 5, 2021, Road Foreman of Engines William Carney provided Plaintiff with Notice of Formal Investigation for Termination based upon the allegation that she falsified her time ticket for hours she did not work on September 26, 2021, in violation of NORAC Rule T. (Notice of Formal Investigation for Termination, ECF No. 72-2 at pp. 41–42.) NORAC provides rules and regulations for train operation by Conductors and Locomotive Engineers, like Plaintiff. (Wilson Dep., ECF No. 72-2 at 28:1–8.) Relevant here, NORAC Rule T, titled "Reporting for Duty; On Call," provides in part:

> Employees must report for duty at the required time.
>
> Employees subject to call must not leave their usual calling place without notice to those required to call them.
>
> Employees must not absent themselves from duty or leave their assignment or engage a substitute to perform their duties without permission of a designated officer.

(NORAC Rules, ECF No. 72-2 at p. 43.) Rule T applies when an employee is on Protect Crew. (Wilson Dep., ECF No. 72-2 at 100:6–8.)

On November 2, 2021, Defendant convened a disciplinary hearing on the formal investigation of Plaintiff; Defendant's Hearing Officer, Zakiyah Bradford,[6] presided over the hearing. (Amtrak Hearing Tr., ECF No. 72-2 at p. 49.) At the conclusion of Plaintiff's disciplinary hearing, she stated:

> I do believe, however, that this hearing is discriminatory because of my race and gender and in retaliation for me making a complaint against [that] Road Foreman. I have made a complaint against that particular Road Foreman back in January and since then I've been treated poorly and harassed.

---

[6] Defendant contends Zakiyah Bradford is a Black female (ECF No. 72-1 ¶ 36); the court is unable to locate the record evidence to support this assertion.

(Hearing Tr., ECF No. 72-2 at p. 104.)  The Hearing Officer responded, "these statements about it being discrimination and in retaliation" were "new information." *Id.*  She then explained:

> Okay. So here's the thing, Ms. Wilson, the previous ODI doesn't play any factor in my decision today. All I care about is whether your actions on the date in question violated Company policy. Okay? So his remark makes no difference. I won't consider it. I don't even look for your previous ODI. I don't even look at it. So it will make no difference whatsoever.

*Id.* at p. 107.  Neither party identifies what "ODI" refers to and the court is unable to discern its meaning other than to infer it is some record of either a previous complaint by Plaintiff of discrimination or previous disciplinary record of Plaintiff.

The Hearing Officer issued her findings on the formal investigation on November 8, 2021. (Hearing Officer Decision, ECF No. 72-3 at p. 26.)   The Hearing Officer concluded: "Based on the totality of the evidence before me, I find that the carrier established by substantial evidence that [Plaintiff] violated the submitted policies. Thus, based on the testimony and the hearing record as a whole, I find that the charges were proven." *Id.*  The following day, Alston notified Plaintiff that she was terminated based on the decision of the Hearing Officer.  (Termination Letter, ECF No. 72-3 at p. 28.)  Johnson was similarly subject to investigation and termination on November 15, 2021. (Wilson Dep., ECF No. 72-2 at 97:15–22; Henson Decl., ECF No. 72-3 ¶ 18.)  Jackson, too, was similarly subject to investigation; however, on November 16, 2021, Superintendent of Commuter Operations Thomas Williamson, Jr., notified Jackson of final disciplinary action and a 45-day suspension in lieu of termination.  (Johnson Notice of Discipline, ECF No. 72-3 at p. 30.) Henson attests that Jackson was not terminated because "he was a fairly new employee with a clean disciplinary record and was forthcoming with information during the investigation of the September 26, 2021 incident."  (Henson Decl., ECF No. 72-3 ¶ 19–20.)

III.    **LEGAL STANDARD**

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id*. at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted); *see Robinson v. Priority Auto. Huntersville, Inc.*, 70 F.4th 776, 780 (4th Cir. 2023) (providing that "plaintiffs need to present more than their own unsupported speculation and conclusory allegations to survive").

In undertaking this inquiry, the court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). The court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also*

*Jacobs v. N.C. Adin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the factfinder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014).

## IV.    ANALYSIS

While the court is ever mindful that *pro se* filings "must be construed liberally, . . . so as to do substantial justice," and are held to less stringent standards that filings drafted by lawyers," *see Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023) (quoting *Erickson v. Paradus*, 551 U.S. 89, 94 (2007)), the court also recognizes that Plaintiff's Second Amended Complaint was drafted by counsel, and Plaintiff received assistance of counsel in drafting her opposition to Defendant's Motion.[7] (ECF No. 74.) The court weighs such circumstances accordingly in addressing Plaintiff's arguments.

### A.  Plaintiff's Rule 56(d) Motion

By virtue of the relief requested, the court turns first to Plaintiff's Rule 56(d) Motion before addressing Defendant's Motion for summary judgment. After Defendant's Motion was fully briefed, Plaintiff filed a document titled "Plaintiff's Amended Response to Defendant's Motion for Summary Judgment." (ECF No. 78.) Because the correspondence failed to address substantively the arguments in Defendant's Motion (arguments to which Plaintiff already responded) and instead asserts a need for further discovery, the court construes the correspondence as a motion pursuant to Rule 56(d).

Federal Rule of Civil Procedure 56(d) provides:

---

[7] Nonetheless it is unclear whether counsel who aided Plaintiff failed to do so in a way that complied with this court's order and the Local Rules of this court. ECF No. 75; Local Rule 102.1(a)(ii) (D. Md. 2023).

> (d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

FED. R. CIV. P. 56(d).

"Rule 56(d) mandates that summary judgment be denied when the nonmovant 'has not had the opportunity to discover information that is essential to his opposition.'" *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014) (quoting *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006)). "[A] court may deny a Rule 56(d) motion 'when the information sought would not by itself create a genuine issue of material fact sufficient for the nonmovant to survive summary judgment.'" *Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243, 250 (4th Cir. 2018) (quoting *Pisano*, 743 F.3d at 931). As the Fourth Circuit explained:

> Rule 56(d) requires a court to defer ruling on a summary-judgment motion until the nonmovant has had a reasonable opportunity to discover information that is essential to its response. *See Pisano*, 743 F.3d at 931. Thus, the relevant question under Rule 56(d) is . . . whether the party seeking to defer a ruling on that motion had a reasonable opportunity to conduct essential discovery.

*Id.* Relatedly, "nonmovants do not qualify for Rule 56(d) protection where they had the opportunity to discover evidence but chose not to." *McCray v. Maryland Dep't of Transp., Maryland Transit Admin.*, 741 F.3d 480, 484 (4th Cir. 2014) (citing *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 246 (4th Cir. 2002)).

Plaintiff's Rule 56(d) Motion is not compelling for several reasons.[8] First, Defendant's Motion was filed after the close of discovery. The discovery period in this case lasted about seven

---

[8] Plaintiff also failed to file either an affidavit or declaration in support of her Motion. However, Fourth Circuit precedent acknowledges that, even in the absence of an affidavit or declaration, "a district court abuses its discretion

months.  (ECF Nos. 17, 29.)  While Plaintiff's argument in her Motion rests upon assertion that her counsel provided ineffective assistance, that counsel only entered his appearance on behalf of Plaintiff in the final month of discovery, meaning that Plaintiff, *pro se* at the time, was responsible for her own discovery efforts for the vast majority of the discovery period.  (ECF No. 41.)  On two occasions, the parties submitted joint or consent requests to extend the deadlines for discovery and the pretrial dispositive motions, which the court granted.  (ECF Nos. 28, 29, 46, 51.)  Plaintiff had notice of the impending discovery and pretrial motions deadlines, and did not seek additional extension of either.  In short, Plaintiff has had a reasonable opportunity to conduct essential discovery.  *See Hodgin*, 885 F.3d at 250, *supra*.  That she failed to do so is insufficient to justify deferred ruling on Defendant's Motion.

Second, a party opposing summary judgment "may not demand discovery for discovery's sake; a Rule 56(d) request is properly denied 'where the additional evidence sought . . . would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment.'" *Gardner v. United States*, 184 F. Supp. 3d 175, 181–82 (D. Md. 2016) (quoting *Strag v. Bd. of Trs.*, 55 F.3d 943, 954 (4th Cir. 1995)).  Plaintiff asserts that "crucial discovery has not been conducted," but she fails to identify with any specificity the discovery she contends is needed that was not available to her during the discovery period.  (ECF No. 78 at p. 1.)  In the same vein, Plaintiff competently and thoroughly responds to Defendant's arguments, at some points relying upon evidence offered by Defendant; and she does not challenge the authenticity or admissibility of any evidence offered by Defendant in support of its Motion.

---

by granting summary judgment when it otherwise has 'fair notice of . . . potential dispute[s] as to the sufficiency of the summary judgment record.'" *Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023) (quoting *Pledger v. Lynch*, 5 F.4th 511, 526 (4th Cir. 2021)).

Third, Plaintiff's Rule 56(d) Motion, which essentially seeks amendment of the court's scheduling order to reopen the discovery period, must satisfy the requirements of Federal Rule of Civil Procedure 16(b)(4). Pursuant to Rule 16(b)(4), the court's scheduling order "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). "[T]he 'touchstone' of that good cause requirement is 'diligence.'" *Faulconer v. Centra Health, Inc.*, 808 F. App'x 148, 152 (4th Cir. 2020) (record citation omitted). For the aforementioned reasons, Plaintiff has not demonstrated diligence or any other basis for good cause to reopen discovery here.

In all, Plaintiff seeks to delay the court's ruling on Defendant's Motion that was filed after the close of discovery on the vague and conclusory allegation that more discovery is necessary. This is insufficient to persuade the court to delay ruling and does not constitute good cause to reopen the parties' discovery period that has been closed for well over a year. The court will therefore deny Plaintiff's Rule 56(d) Motion and proceed to ruling on Defendant's Motion seeking summary judgment.

**B. Defendant's Motion**

Defendant moves for summary judgment on all Plaintiff's claims. As discussed above, Plaintiff's asserted essentially three counts, all arising under Title VII.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). "Title VII forbids (i) employment practices that discriminate against an employee on the basis of" the aforementioned protected classes, per 42 U.S.C. § 2000e-2, "and (ii) retaliation against an employee for opposing adverse actions that she reasonably suspects to be unlawful

under Title VII," per 42 U.S.C. § 2000e-3.  *Strothers v. City of Laurel*, 895 F.3d 317, 326–27 (4th Cir. 2018).

### 1.  *Title VII Disparate Treatment Claims*

Defendant moves for summary judgment on Plaintiff's claims of disparate treatment, asserting that Plaintiff has not produced evidence in support of a *prima facie* case of race or sex discrimination, and, even if she has or could, she does not generate a genuine dispute of material fact that Defendant's legitimate, nondiscriminatory reason for Plaintiff's termination was pretextual.  (ECF No. 72-1 at pp. 9–13.)  In response, Plaintiff argues that she has established a *prima facie* case and that she has created a genuine dispute of material fact as to pretext.  (ECF No. 76-1 at p. 9.)

As discussed above, Title VII forbids employment practices that discriminate against an employee based on, relevant here, race or sex.  *See Strothers*, 895 F.3d at 326–27 and 42 U.S.C. § 2000e-2, *supra*.  "Disparate treatment occurs when an employer treats certain people less favorably than others on the basis of a protected classification such as race."  *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 207 (4th Cir. 2019) (quoting *Carter v. Ball*, 33 F.3d 450, 456 n.7 (4th Cir. 1994)).  "A plaintiff may prove discrimination through either of two methods: (1) direct evidence of discrimination, or (2) through the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, [411 U.S. 792 (1973)], and its progeny."  *Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244, 255 (4th Cir. 2025) (citing *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223 (4th Cir. 2019)).  "Direct evidence is 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'"  *Cole v. Fam. Dollar Stores of Md., Inc.*, 811 F. App'x. 168, 175 (4th Cir. 2020) (quoting *Taylor v. Va. Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999)).

Absent direct evidence, as is the case here, a plaintiff must establish a *prima facie* case pursuant to the *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Pursuant to the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing by a preponderance of the evidence a prima facie case of discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). To establish a prima facie case of discrimination, a plaintiff must demonstrate: "(1) she is a member of a protected class; (2) her employer took an adverse action against her; (3) she had been fulfilling her employer's legitimate expectations at the time of the adverse action; and (4) the adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination . . . ." *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 649–50 (4th Cir. 2021) (citing *Lettieri v. Equant*, 478 F.3d 640, 646 (4th Cir. 2007)). "The burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253; *see Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019) (same). A plaintiff who demonstrates a prima facie case "in effect creates a presumption that the employer unlawfully discriminated against the employee." *Burdine*, 450 U.S. at 254. "To establish a 'presumption' is to say that a finding of the predicate fact (here, the *prima facie* case) produces 'a required conclusion in the absence of explanation' (here, the finding of unlawful discrimination)." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993) (citations omitted).

If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for [the employment action]." *McDonnell Douglas Corp.*, 411 U.S. at 802. "'[T]he defendant must clearly set forth, through the introduction of admissible evidence,' reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Hicks*, 509

14

U.S. at 507 (quoting *Burdine*, 450 U.S. at 254–55). "If the employer carries this burden, the plaintiff then must prove by a preponderance of the evidence that the neutral reasons offered by the employer 'were not its true reasons, but were a pretext for discrimination.'" *Wannamaker-Amos*, 126 F.4th at 255 (quoting *Burdine*, 450 U.S. at 253). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253.

    a.   <u>Prima Facie Case</u>

Defendant contends that Plaintiff is unable to demonstrate that the circumstances of her termination give rise to a reasonable inference of unlawful discrimination.[9] (ECF No. 72-1 at p. 10.) Typically, in cases brought through the *McDonnell Douglas* burden-shifting framework, a circumstance suggesting "an unlawfully discriminatory motive" is the existence of a similarly situated comparator outside of the protected class who was subjected to different treatment. *See Noonan v. Consol. Shoe Co., Inc.*, 84 F.4th 566, 572 (4th Cir. 2023) (citation omitted). While Plaintiff is "not required as a matter of law to point to a similarly situated comparator to succeed on a discrimination claim," *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (citing *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545 (4th Cir.2003)), she must still "present evidence that reasonably creates an inference of an unlawfully discriminatory motive to shift the

---

[9] Defendant's Motion does not advance substantive legal argument that Plaintiff was not fulfilling her employer's legitimate expectations at the time of the adverse action. *See* ECF No. 72-1 at p. 10 ("Given Ms. Wilson's disciplinary history, . . . it is questionable that she was meeting Amtrak's expectations of a Locomotive Engineer at the time of her termination. Regardless, Ms. Wilson cannot establish the fourth element of her race discrimination claim."). Plaintiff argues that this element was satisfied in her opposition. (ECF No. 76-1 at p. 7.) In reply, Defendant asserts substantive argument opposing same. (ECF No. 77 at p. 10–12.) The court ordinarily does not consider arguments raised for the first time in a reply, *see De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 531 (4th Cir. 2022) ("Generally, 'new arguments cannot be raised in a reply brief' before the district court. . . . A contrary rule runs the risk of depriving a nonmovant an opportunity to respond." (quoting *United States v. Smalls*, 720 F.3d 193, 197 (4th Cir. 2013)). But this case presents a different posture where Plaintiff on her own asserted the element was satisfied and subsequently filed an "amended response" after Defendant's reply. At the same time, Plaintiff's Rule 56(d) Motion does not substantively respond to Defendant's new argument. Given that the argument was not raised in Defendant's Motion, and where the court concludes that summary judgment is warranted on Plaintiff's disparate treatment claims without addressing this element, the court declines to address it.

burden to" Defendant.  *Noonan*, 84 F.4th at 573; *Jones v. W. Geophysical Co. of Am.*, 669 F.2d 280, 284 (5th Cir. 1982) (noting that "[t]he underlying purpose of the fourth element in the *McDonnell Douglas* formulation is precisely to establish this unlawful inference of discrimination").

### i.    *Inference of Sex Discrimination*

Plaintiff contends she satisfies the fourth element of a *prima facie* case of disparate treatment on the basis of sex because "other male members of the Protect Crew, Mr. Johnson and Mr. Jackson, were reinstated to their former positions."  (ECF No. 76-1 at p. 8.)  According to Plaintiff, their purported reinstatement "gives rise to an inference of unlawful discrimination." *Id.*

Plaintiff's theory of disparate treatment based on sex relies on her claim that similarly situated comparators, Johnson and Jackson, both males, were subject to less severe punishment than was she.  Plaintiff must then demonstrate "different treatment from similarly situated employees outside the protected class." *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).  "[T]o establish a valid comparator, the plaintiff must produce evidence that the plaintiff and comparator 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223–24 (4th Cir. 2019) (quoting *Haywood v. Locke*, 387 F. App'x. 355, 359 (4th Cir. 2010)).  "The similarly situated element requires a plaintiff to 'provide evidence that the proposed comparators are not just similar in *some* respects, but similarly-situated *in all respects.*'" *Cosby v. S.C. Prob., Parole & Pardon Servs.*, 93 F.4th 707, 714 (4th Cir. 2024) (emphasis in original) (quoting *Spencer v. Va. State Univ.*, 919 F.3d 199, 207–08 (4th Cir. 2019)).  While "a comparison between similar employees will never involve precisely the same set of

work-related offenses occurring over the same period of time and under the same sets of circumstances," "[t]he similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." *Cosby v. S.C. Prob., Parole & Pardon Servs.*, 93 F.4th 707, 714 (4th Cir. 2024) (first quoting *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223–24 (4th Cir. 2019); then quoting *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008)).

Here, even assuming Johnson and Jackson were subject to the same supervisors and standards, Plaintiff fails to show that Johnson and Jackson were otherwise similarly situated, meaning without "differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *See Haynes*, 922 F.3d at 223–24, *supra*. The undisputed facts are that Plaintiff had been subject to repeated previous disciplinary action, including earlier that same year for a similar type of infraction—assignment abandonment and submitting a falsified time ticket. (Henson Decl., ECF No. 72-3 ¶ 8.) Plaintiff offers no evidence on which a reasonable factfinder could conclude that Johnson and Jackson had the same or similar disciplinary histories; indeed, Defendant's employee attests that Jackson had a clean disciplinary record, which Plaintiff does not dispute. *Id.* ¶ 20.

Further, is it undisputed that Defendant did terminate Johnson; he was reinstated based on an order by an arbitrator, meaning the decision was not within Defendant's control. (Wilson Dep., ECF No. 77-1 at 103:2–104:4.) Accordingly, Defendant did not treat Johnson differently than Plaintiff, even assuming he was similarly situated. The undisputed evidence is that Jackson was disciplined by a different decisionmaker than Plaintiff (Superintendent of Commuter Operation) after a disciplinary hearing before a different hearing officer. Plaintiff offers no evidence in

17

support of her claim that Jackson was similarly situated and subject to more favorable treatment notwithstanding the aforementioned evidence.

Plaintiff therefore fails to generate a triable issue as to whether Johnson and Jackson were similarly situated.

### ii.    Inference of Race Discrimination

As to her claim of race discrimination, Plaintiff argues she has produced sufficient evidence on which a factfinder could conclude she was subject to discriminatory animus, because, after she testified at the November 2021 hearing that she was treated differently because of her race and sex in another instance, the Hearing Officer responded:

> Okay. So here's the thing, Ms. Wilson, the previous ODI doesn't play any factor in my decision today. All I care about is whether your actions on the date in question violated Company policy. Okay? So his remark makes no difference. I won't consider it. I don't even look for your previous ODI. I don't even look at it. So it will make no difference whatsoever.

(Hearing Tr., ECF No. 72-2 at p. 107.)  It is not at all clear to the court how the Hearing Officer's comment suggests or allows for a reasonable conclusion that the Hearing Officer (or any Defendant employee) was motivated by discriminatory animus in actions related to Plaintiff.  Indeed, no reasonable factfinder could conclude that the above-referenced comment suggests that an employee of Defendant possessed a discriminatory animus based on race.  Plaintiff's sole allegation is further undermined by the fact that Alston, Defendant's employee who terminated Plaintiff, is a member of the same protected class as Plaintiff.  *See Demesme v. Montgomery Cnty. Gov't*, 63 F. Supp. 2d 678, 683 (D. Md. 1999), *aff'd,* 208 F.3d 208 (4th Cir. 2000) ("The fact that the decision makers were of the same protected class suggests no discriminatory motivation.").

To establish a *prima facie* case, Plaintiff must "present evidence that reasonably creates an inference of an unlawfully discriminatory motive to shift the burden to" Defendant.  *Noonan v.*

*Consolidated Shoe Co., Inc.*, 84 F.4th 566, 573 (4th Cir. 2023).  The asserted evidence here is plainly insufficient for the reasons described above.  Plaintiff offers no evidence on which a reasonable factfinder could conclude that her termination was motivated by, or because of, unlawful discrimination based on race.

    a.  <u>Pretext</u>

Even were the court to find Plaintiff demonstrates a *prima facie* case of disparate treatment on the basis of race or sex, or that she has generated a genuine dispute of material fact related to same, her claims would still fail because she cannot meet the ultimate burden of persuasion based upon her proffered evidence.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993) and *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981), *supra*.  Defendant here has "set forth, through the introduction of admissible evidence,' reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action."  *See Hicks*, 509 U.S. at 507, *supra*.  In support thereof, Defendant offers undisputed evidence of Plaintiff's alleged misconduct, Defendant's disciplinary investigation and hearing, and, ultimately, the resulting disciplinary action.  Indeed, "[v]iolation of company policy has been recognized as a legitimate reason for terminating an employee."  *Gibson v. Marjack Co.*, 718 F. Supp. 2d 649, 656 (D. Md. 2010) (citing cases); *see also e.g.*, *Burnett v. BJ's Wholesale Club*, 722 F. Supp. 3d 566, 577 (D. Md. 2024), *aff'd sub nom.*, No. 24-1228, 2024 WL 3042902 (4th Cir. June 18, 2024), and *motion for relief from judgment denied sub nom.*, No. CV JKB-22-02840, 2024 WL 3890781 (D. Md. Aug. 21, 2024); *Gordon v. Holy Cross Hosp. Germantown, Inc.*, 385 F. Supp. 3d 472, 481 (D. Md.), *aff'd,* 780 F. App'x 84 (4th Cir. 2019).  Defendant also provides undisputed evidence of Plaintiff's previous disciplinary history, including a similar

infraction from earlier in the year that resulted in termination, but which was later lessened to suspension.

The burden, therefore, shifts back to Plaintiff to rebut Defendant's evidence by demonstrating its purported reason for her termination was merely a pretext for discrimination. *See Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244, 255 (4th Cir. 2025) and *Burdine*, 450 U.S. at 253, *supra*. "A plaintiff may establish pretext through two routes"—first, by "offering evidence that the employer's justification is 'unworthy of credence," and second, by "adducing other forms of circumstantial evidence sufficiently probative of discrimination." *Wannamaker-Amos*, 126 F.4th at 257 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 134, 147 (2000)). "If the plaintiff makes either showing of pretext, the case must be decided by a trier of fact and cannot be resolved on summary judgment. *Id.* (citing *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 652 (4th Cir. 2021)).

Plaintiff offers three pieces of "evidence" in support of her claim that Defendant's legitimate, nondiscriminatory reason for her termination was pretextual (as to both her race and sex discrimination claims)—that her male colleagues either were not terminated or were reinstated, that Lamontagne made a comment that "[Johnson] would take one for the team, and that [Plaintiff] would be fired and not get her job back," and that her Hearing Officer refused to consider her assertion of discrimination at the disciplinary hearing. (ECF No. 76-1 at p. 9–10.) Such evidence is insufficient as a matter of law to defeat summary judgment, which is to say, no reasonable factfinder could conclude, based on such evidence, that Defendant's alleged reason for termination was not the true reason.

As to Plaintiff's assertion of comparators, the undisputed evidence is that Defendant did in fact terminate Johnson; and he was later reinstated pursuant to an appeal through arbitration.

(Wilson Dep., ECF No. 77-1 at 103:2–104:4.)  In other words, by Plaintiff's own testimony, Defendant terminated Johnson just as it did Plaintiff; Johnson was only reinstated because an arbitrator ordered it.  *Id.*  Plaintiff's self-serving testimony does not generate a triable issue in support of her claim of pretext for unlawful sex discrimination.  Moreover, Plaintiff's reliance on Defendant's actions as to her coworkers is not persuasive for the same reasons the court discussed *supra*.

As to the alleged comment by Lamontagne, Plaintiff's testimony as to same is also insufficient to support a claim of pretext.  As discussed above, Plaintiff testified that she heard "through [her] conductor," that Lamontagne "said that [Johnson] would have to take one for the team, and [Plaintiff] would be fired and not get [her] job back." (Wilson Dep., ECF No. 72-2 at 102:15–19.)  As an initial (but nonetheless crucial) matter, Plaintiff fails to provide any information or basis as to how she came to learn of this purported comment; her testimony was that she heard this purported comment "through [her] conductor." *Id.*  She offers no argument of how such a comment would be admissible evidence at trial.  Even considering the comment as true, however, it still does not support Plaintiff's claim of pretext because the undisputed evidence is that Lamontagne did not conduct Plaintiff's disciplinary investigation or hearing, or make the decision to terminate her.  (Hearing Officer Decision, ECF No. 72-3 at p. 26; Termination Letter, ECF No. 72-3 at p. 28.)  Thus, even if the court were to consider this to be a dispute of fact, the fact itself would not be material.  *See Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021) (explaining that "[a] fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law") (quoting *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020)).

Finally, the Hearing Officer's comment is similarly insufficient to meet Plaintiff's burden of persuasion for the reasons discussed above. The Hearing Officer's comment does not in any way relate to Plaintiff's sex or race, and instead is merely an assertion that she would make a decision regarding Plaintiff's alleged misconduct based upon the evidence before her at the hearing. The comment does not support a showing of a discriminatory animus.

Accordingly, no reasonable factfinder could conclude, based on the undisputed evidence, Defendant's legitimate, nondiscriminatory reason for terminating Plaintiff was a pretext for discrimination.

For the foregoing reasons, the court will grant Defendant's Motion as to Plaintiff's claims of disparate treatment based on race and sex.

### 2. *Title VII Retaliation Claim*

Defendant further argues it is entitled to summary judgment on Plaintiff's retaliation claim because Plaintiff cannot, based on the undisputed facts, establish a *prima facie* case of retaliation or generate a genuine dispute of material fact as to pretext. (ECF No. 72-1 at p. 13–15.)

Title VII makes it unlawful for an employer to discriminate against any employee because she "has made a charge, testified, assisted, or participated in any manner" in a Title VII enforcement proceeding. 42 U.S.C. § 2000e-3(a). This provision's "purpose is to protect employees who complain about real or perceived discrimination in the workplace from retaliation, which threatens to chill the willingness of employees to speak up." *Laurent-Workman v. Wormuth*, 54 F.4th 201, 212 (4th Cir. 2022).

As with discrimination claims, a plaintiff "may prove that an employer took action with . . . retaliatory intent through direct evidence or through the burden-shifting framework of *McDonnell Douglas*." *Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 327 (4th Cir. 2018).

Pursuant to the *McDonnell Douglas* three-step framework, a plaintiff must first establish a prima facie case of retaliation. *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015). To establish a *prima facie* case of retaliation, a plaintiff "must show: '(1) engagement in a protected activity; (2) [an] adverse employment action; and (3) a causal link between the protected activity and the employment action.'" *Barbour v. Garland*, 105 F.4th 579, 589–90 (4th Cir. 2024) (quoting *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)). After a prima facie showing, "[t]he burden then shifts to the [employer] to show that its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason." *Foster*, 787 F.3d at 250 (citation omitted). If such showing is made, the burden then "shifts back to the plaintiff to rebut the employer's evidence by demonstrating that the employer's purported nonretaliatory reasons were not its true reasons, but were a pretext for discrimination." *Id.* (citation omitted).

There is no dispute that Plaintiff engaged in protected activity in the filing of her EEOC Charges on March 27 and April 6, 2021, both of which preceded her termination. (ECF No. 1 at p. 1; EEOC Charges, ECF No. 67-1.) There is similarly no dispute that Plaintiff was subject to an adverse employment action—her termination on November 9, 2021. (ECF No. 67 ¶ 45; Henson Decl., ECF No. 72-3 ¶ 17.) Defendant, however, contends that Plaintiff fails to identify any record evidence of a causal link between the two, and the temporal proximity between the two is too remote to establish causation at the *prima facie* stage. (ECF No. 72-1 at p. 13–14.)

"[E]stablishing a 'causal relationship' at the prima facie stage is not an onerous burden." *Strothers*, 895 F.3d at 335 (citing *Burgess v. Bowen*, 466 F. App'x 272, 283 (4th Cir. 2012) (explaining that "[v]ery little evidence of a causal connection is required to establish a prima facie case [of retaliation]"). "[A] plaintiff may demonstrate causation by temporal proximity, or by 'the existence of facts that suggest that the adverse action occurred because of the protected

activity,' or by a combination of the two." *Barbour*, 105 F.4th at 593.  Indeed, a plaintiff need only show "(1) the employer either understood or should have understood the employee to be engaged in protected activity and (2) the employer took adverse action against the employee soon after becoming aware of such activity." *Strothers*, 895 F.3d at 335–36.

"'[T]emporal proximity between an employer's knowledge of protected activity and an adverse employment action' may establish causation only if it is 'very close.'" *Laurent-Workman v. Wormuth*, 54 F.4th 201, 219 (4th Cir. 2022) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).  "Although there is no 'bright-line rule' for when temporal proximity helps or hurts a cause of action for retaliation, . . . a two-month temporal gap 'between [ ] notice of the complaint and the adverse employment action is sufficiently long so as to weaken significantly the inference of causation between the two events.'" *Id.* (first quoting *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 126–27 (4th Cir. 2021); then quoting *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003)).

However, "intervening events can bridge what would otherwise be a prohibitively long temporal gap." *Holloway v. Maryland*, 32 F.4th 293, 300 (4th Cir. 2022).  For instance, "evidence of recurring retaliatory animus during the intervening period can be sufficient to satisfy the element of causation." *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007).  Similarly, a plaintiff may "overcome" the temporal gap by showing that the adverse action "came at a 'natural decision point . . . making likely' that any adverse action would happen at that time." *Laurent-Workman*, 54 F.4th at 219 (quoting *King*, 328 F.3d at 151 n.5).

Where, as here, temporal proximity provides the basis of Plaintiff's claim for causation, yet the temporal gap between protected activity and adverse action is about seven months, Plaintiff fails to offer sufficient evidence of causality to generate an issue for trial. *See, e.g.*, *Burnett v. BJ's*

*Wholesale Club*, 722 F. Supp. 3d 566, 576 (D. Md. 2024), *aff'd sub nom.*, No. 24-1228, 2024 WL 3042902 (4th Cir. June 18, 2024), *and motion for relief from judgment denied sub nom.*, No. CV JKB-22-02840, 2024 WL 3890781 (D. Md. Aug. 21, 2024) (holding that a temporal gap of "four to five months" was "too long to support an inference of causation"); *Green v. Bd. of Educ. of Anne Arundel Cnty.*, No. SAG-19-2595, 2021 WL 1265230, at *5 (D. Md. Apr. 6, 2021), *aff'd*, No. 21-1552, 2023 WL 34166 (4th Cir. Jan. 4, 2023) (concluding that a temporal gap was not "very close" as required to establish causality in the absence of any other evidence); *Sewell v. Strayer Univ.*, 956 F. Supp. 2d 658, 673 (D. Md. 2013) (stating that a plaintiff's claim was "simply not plausible" where it depended solely on an allegation of "temporal proximity of five months— a period of time that is not 'very close'"). Plaintiff offers no argument or evidence in support of causation based on, for example, "recurring retaliatory animus during the intervening period"[10] or that the adverse action came at a "natural decision point." *See Lettieri*, 478 F.3d at 650 and *Laurent-Workman*, 54 F.4th at 219, *supra*. Because Plaintiff identifies no record evidence to support an inference of causation, she is unable to establish a *prima facie* case of retaliation in violation of Title VII. Defendant is therefore entitled to summary judgment.

Similarly, as Defendant notes, Plaintiff offers no evidence to support a finding that Alston or Armstrong, as those who exercised decision making authority over her disciplinary investigation and termination, knew of Plaintiff's EEOC Charges. (ECF No. 72-1 at p. 14.) In the Fourth

---

[10] Though unclear, Plaintiff seems to argue that, because Lamontagne had "evil animus" toward her and testified at her disciplinary hearing, she has offered facts to support a showing of recurring retaliatory animus during the intervening time period. (ECF No. 76-1 at p. 10.) This is not persuasive for multiple reasons. First, Lamontagne's participation in the hearing occurred shortly before termination, so it does little to bridge the temporal gap between her protected activity and adverse action. Second, Plaintiff does not assert, and the undisputed evidence does not support a reasonable conclusion, that Lamontagne had any decision-making authority regarding the disciplinary investigation or her termination. Third, as addressed above, Plaintiff offers no argument as to how a comment she heard secondhand and is offered for its truth is admissible. Finally, Plaintiff's unsupported allegations about Lamontagne are either conclusory and based on mere speculation, or are utterly devoid of reference to her sex or race (such as, alleging Lamontagne "harassed" her by asking her questions about how long she had been engineer, how well she knew the territory, and where she worked).

Circuit, a causal relationship between protected activity and adverse action requires "proof of a decisionmaker's knowledge of protected activity to support a Title VII retaliation claim," meaning that "the decisionmaker was aware of the protected activity at the time the alleged retaliation occurred." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 124 (4th Cir. 2021); *see Jennings v. Frostburg State Univ.*, 679 F. Supp. 3d 240, 281 (D. Md. 2023) (same). Where Plaintiff has failed to adduce any evidence of same, she cannot demonstrate a *prima facie* case.

Even had Plaintiff established a *prima facie* case of retaliation, she would fail to defeat Defendant's asserted legitimate nondiscriminatory reason for her termination, as discussed above. Upon the undisputed evidence here, and where Plaintiff offers no record evidence or fact to create any genuine disputes of material fact, no reasonable factfinder could conclude that Defendant's reason for terminating Plaintiff was a pretext for discrimination. Beyond the unavailing assertions discussed above, Plaintiff identifies no evidence to support a reasonable finding that Defendant's rationale was pretextual; her speculation is insufficient to survive summary judgment. *See Robinson v. Priority Auto. Huntersville, Inc.*, 70 F.4th 776, 780 (4th Cir. 2023), *supra*.

Having concluded that no reasonable factfinder could find, based on the undisputed facts, that Plaintiff meets her burden to show Defendant retaliated against her in violation of Title VII, the court will grant Defendant's Motion to the extent it seeks summary judgment as to same.

## V.    <u>CONCLUSION</u>

For the reasons set forth herein, by separate order, Defendant's Motion will be granted, and Plaintiff's Rule 56(d) Motion will be denied.

March 20, 2025                                /s/_____
                                                         Julie R. Rubin
                                                         United States District Judge